at all. Oral argument is 15 minutes for plaintiff, 15 minutes to be shared by defendants. David Lee Engler for the appellant. Thank you. Good morning, Honorable Court, opposing counsel. I am Attorney David Engler. I represent Mr. Potts in this matter. I'd like to reserve five minutes for rebuttal time. Fine. This case is fairly straightforward in terms of the de novo review by this court of the lower court's determination to grant summary judgment to the defendants, in this case the appellees. The sole issue that the judge at the district court level relied upon was when the applicable statutory timeline had lapsed. We had argued that and argue again, of course, before this court. It's six months after the May 1, 2012 letter that Mr. Potts, who was a warehouseman, received from the union local 377 of the Teamsters. Mr. Potts works in the warehouse at the bottling company. He files an unfair labor practice charge against the Teamsters, the local Teamsters, that was going through some difficult times at that particular point in time in that local. Why shouldn't the time of filing the charge be the key time? Well, I think this court had addressed that issue in Robinson and also in Central Brass, where the contractual provisions, if they provide some meaningful type of relief, then the courts want the grievant to go forward and exhaust those administrative or grievance remedies, the contractual remedies, before availing themselves to the court. Likewise, in the case of Simmons v. Howard, the case was what happened after the date of Mr. Potts filing the charge against the union. He then receives on May 1, that 2012 letter, which if all inferences are to be drawn in favor of Mr. Potts at the summary judgment level, certainly Mr. Potts getting that letter from the union, where the union then explicitly states in its May 1, 2012 letter that there was a pending grievance, that Local 377 was continuing to investigate the merits. So are you arguing equitable tolling? I am, Your Honor. That wasn't argued below. Excuse me, Your Honor? That was not argued below. It was argued, Your Honor, below. Not effectively, obviously. The equitable tolling issue I think is fairly straightforward in terms of the issue that Mr. Potts just wants to make sure that the union is going to follow through with doing all it can on his behalf to just resolve the unfair labor practice he has against the union. He relies upon them when they send him that letter eventually saying, look, that's it. We're done with it. We're not going to go any further on your behalf. He relied upon that. The 6-month starts from May 1, and so his hybrid 301 appeal was timely at that point in time. Well, I guess I'm a little bit confused why it shouldn't be the time of the filing of the NLRB charge. Are you saying that in every case someone should have equitable tolling until that charge is decided? Not that charge, Your Honor, but in the Simmons v. Howard case, to look at the subsequent events, and they could defer the accrual date for statute purposes. Subsequent events occurred that were evidenced by the letter that was received by Mr. Potts that indicated that the union was actually taking efforts on his behalf. He was engaged in good faith efforts as it was indicated in Lucas v. Mountain State's telephone. The need to exhaust the grievance procedure is essential, and so the equitable tolling in this case is just that Mr. Potts and the union both, from any reasonable inference, had not exhausted that grievance process. Thus, the letter of May 1, 2012. He had already taken the position that the union had not properly represented him, so it's a little hard to see how we kick in equitable tolling even though things were continuing to occur, unless you take the position that it was the resolution of the grievance that triggers the beginning of the limitations period. Your Honor, I believe that that's exactly the case because, you know, when we file things, when we're making a claim against the union, Mr. Potts is making a claim, and the union then says, hey, we can get this resolved. This issue can still be resolved. There is nothing that precludes the union from that point in time from resolving the matter and using that contractual process. Once he filed the ULP, there's nothing that would prohibit the union from actually resolving it and getting Mr. Potts the remedy that he sought. And was there a meaningful remedy available to Mr. Potts at that time? The answer would have been yes if the union had pursued his grievance. So Mr. Potts, in good faith, he's not alleging bad faith on the part of the union, but in good faith on his behalf, relies upon the fact that the union's still trying to sort things out. But, you know, it might, it would help your argument in this respect if that were supported by the record. But I, if I am understanding the record correctly, it reflects that your client may have withdrawn the charge, but he couldn't even remember why he did so. So the record doesn't seem to be consistent with a theory that he changed his mind and decided the union was going to do right by him, and therefore things continued to happen, and it was only at the conclusion of those events that he again had a reason to believe that the union had not properly represented him. And so the record doesn't seem very consistent with the argument you've just made, unless you're, unless I'm incorrect about the record. The grievance, Your Honor, of 11383 was never withdrawn at any point. I'm asking about the charge with the NLRB. Correct. And what Mr. Potts said in his declaration about that. Okay. My apology. The, um, Mr. Potts did believe that the union was going to be able to resolve the matter, and so he was relying upon the union because... But where's, well, okay, so where in the record would we find that? Well, I think it's the inference that's drawn, the favorable inference to the non-moving party here, Mr. Potts, at the time that the court enters the... How would we know that? By looking at the union's own letter, the own letter that they send to Mr. Potts saying... How could Mr. Potts' belief be inferred from union action? Because Mr. Potts said, indicated, at that point in time when he received that May 1st, 2012 letter, from the point in time of filing the charge until the point in time he receives the letter, he is not clear as to the status of his actual charge. Mr. Potts, however, did nothing formally to withdraw that charge. The union... The charge of the NLRB. Correct. And the charge itself said, since honor about November 17th, 2010, and continuously thereafter, the union failed to represent Potts. So that was his formal position throughout this entire time of subsequent events, at least until some point that your client couldn't remember anything about, anything material about. Would that be right? That would be right, Your Honor. That would be right. But again, I think it's that that letter is critical, and that you have a... There's a transitionary time period for the executive board is meeting in 2012. They then go back to Mr. Potts, and they indicate that, okay, there isn't anything we're going to do for Mr. Potts. That, I think, is the strongest evidence that would indicate that Mr. Potts had reason for his belief that there was an May it please the court. My name is Joseph Mando. I'm here on behalf of Appellee Teamsters Local 377. If the court would permit, since we do have a situation where we have co-appellees, I will take 7 minutes and 30 seconds, and I'll allow co-appellee Ms. Cintra McCardle, who's here on behalf of ABC, to reserve the remaining 7 minutes and 30 seconds. Your Honors, this case was properly decided at the district court. Judge Adams, relying upon established Sixth Circuit precedence in the case of Fox, found that notwithstanding plaintiff's argument that Local 377 somehow reactivated or reset the time limit in his case by sending him a letter in 2012, what Fox holds is that that's not the case. In a situation like this, where you have a plaintiff who continues to correspond with his union, effectively after a grievance was withdrawn and dismissed by the plaintiff, the plaintiff cannot then reactivate that grievance by corresponding with his union. What date did the plaintiff dismiss his grievance? There's a number of correspondence. There's a variety of correspondence between Mr. Averill, who was then the union's business agent, who was in charge of assisting Mr. Potts and Mr. Potts, occurring in the 2010 year. And the record is replete, and indicated in the appellee's brief of 377, that in several instances Mr. Potts requested in writing that Mr. Averill withdraw his grievance, 1183, and Mr. Averill corresponded with Mr. Potts, indicating that he did, in fact, withdraw that grievance. What was the date that you would rely on for the withdrawal of that? I would put that no later than by February 25, 2011. And the reason I cite to that is that is a letter, it's page ID 604, and that is a letter from Mr. Averill, and he's addressing Mr. Potts in the status of two grievances. And the grievances that are listed do not include 11823. And what that shows is that, in fact, consistent with Mr. Averill's prior correspondence with Mr. Potts, that grievance had been withdrawn. But there's no document saying, I withdraw the grievance, right? The correspondence between the company and Mr. Averill, no, Your Honor, there is not. All that we have to rely upon is the correspondence between Mr. Averill and Mr. Potts, wherein Mr. Averill says, I will withdraw your grievance, and Mr. Potts also says to Mr. Averill, the grievance 11823 was withdrawn per my prior request. But, no, to answer your question, there is no correspondence between Local 377 and the company, wherein it specifically says we've withdrawn that grievance. So your position as to when the statute of limitations started to run is what? What date? It began to run absolutely no later than when Mr. Potts filed his charge with the NLRB. And as Judge Gibbons cited, that charge, which is a formal declaration on a U.S. government paper, it says since on or about November of 2010. So our position is that at the absolute latest, construing everything the most favorably you can to Mr. Potts, it began to accrue no later than when he filed that charge, but likely earlier. And that's 5-11-11, right? Yes, Your Honor. So what happened to that NLRB charge? Was that resolved on a particular date? It was dismissed, I believe, for lack of evidence. Unfortunately, I don't have that date in front of me here. So the question that I would have would be, shouldn't the date start as of the date that the NLRB charge is dismissed? Why wouldn't that be the logical thing? In order to allow for the NLRB to take the appropriate amount of time to resolve the charge, we wouldn't want to have someone like Mr. Potts having to file while the NLRB was still deliberating. Sure. Six months is a pretty short time for the statute of limitations. So why shouldn't there be tolling during the pendency of the NLRB charge? Your Honor, if you took six months from the date, I believe that that charge was actually dismissed in the summer of 2011. And unfortunately, I don't have the charge here in front of me, the resolution date. Even if you took that date, you still, Mr. Potts is on trial. It would be too late under that. Correct. But the key then, if that, I mean, we should have a principle that's a good principle to apply. And what I wonder is why shouldn't the principle be if you file an NLRB charge and the argument is, hey, you realize you had a problem with your union then. Why shouldn't we give the NLRB the time to resolve it? I understand that, and that does make sense to me that there should be. But I think that the standard is pretty clear with these types of cases. And the standard is when the plaintiff knew or reasonably should have known. And, frankly, Judge Adams, I think, extended Mr. Potts every courtesy in basing the accrual date on the date that his charge was filed. Mr. Potts, in several prior correspondence that are referenced in Pelley 377's brief, as well as the underlying motion for summary judgment, indicated in writing that he believed Mr. Averell in particular and Local 377 had, in fact, breached their duty to fairly represent him much prior to the filing of the NLRB charge. May I ask a question? Yes. Is the dismissal date in the record? Is it that you don't know it because it isn't in the record? Or is it that it's in the record? It's in the record, Your Honor, but, unfortunately, I can't pull it out of my brain right now. It is in there. Your position is that it was dismissed rather than Mr. Potts withdrew it.  Whether Mr. Potts withdrew it or he voluntarily withdrew it or the Board dismissed it for lack of evidence, I think the functional equivalence. And if you take that date, if the Court were so inclined to adopt, as Judge Moore suggested, a potential standard where an NLRB charge would toll the 6-month statute of limitations while the NLRB is investigating it, in Mr. Potts' case, he's still out of time. Do you admit that Mr. Potts raised the equitable titling issue in the district court? No, I don't believe that he did. I don't believe that that was argued below. So his argument below was that the statute should start to run? As of the date that Mr. Potts received the 2012 letter from Teamster Local 377's new executive board. That's what his argument was below, as I understood it, Your Honors. In sum, Your Honors, when you look at the facts in this case, there's effectively no doubt that Judge Adams extended Mr. Potts the courtesy of the correct legal procedure in construing the facts in the light most favorable to him. As I said, Judge Adams based his beginning of the statute of limitations on the date that Mr. Potts filed a document with a United States agency claiming that the union unequivocally failed to represent him. To allow Mr. Potts to then resuscitate his claim based on continuing correspondence with the union is contrary to this court's finding in Fox and contrary to established case precedent elsewhere. Thank you very much. Thank you. We'll hear from Ms. McArdle. Thank you, Your Honors. May it please the court, my name is Cynthia McArdle. I represent the Appalee, the American Bottling Company. I would like to address two issues before the court and I will introduce those issues and then I'd like to address some of the Your Honors questions that were given to both Appellant Counsel and Mr. Mando. The issues I had planned to address dealt with the lack of exhaustion for Grievance 11823 and the second issue was that American Bottling Company did not breach the collective bargaining agreement. But before turning to those two issues, I did want to address the questioning relating to, by Judge Moore, shouldn't the date start upon the dismissal of the NLRB charge? Judge Moore, the precedent in the Sixth Circuit is Garish v. UAW International, a 2005 case, which Mr. Mando referred to the quote, which is that the statute of limitations begins to run when the individual knew or should have become aware of the union's conduct. Therefore, whether or not the NLRB came to a conclusion that the duty had been breached or that a ULP existed is not relevant to that analysis. Did that case address that particular question? In terms of there being an NLRB charge and the charge being pending when the six-month statute would have run? It did not, Your Honor. However, the case cited by the appellant, Simmons v. Howard University, which is actually a District of Columbia Circuit case, states in that case that there is an established line of precedent citing decisions out of the First and Eighth Circuit that when an individual files an NLRB charge indicating that the union has breached its duty of fair representation, there is no question that the statute of limitation begins to run at that time. Right. I understand that. But the question that I have is, is there a binding precedent on a published decision of the Sixth Circuit or the Supreme Court that would say that there shouldn't be tolling while the NLRB is considering that charge? I am not aware of a decision from the Sixth Circuit or the United States Supreme Court giving that authority, Your Honor. However, if I could address what happened to the NLRB charge. Yes, that would be helpful. I do not believe that that is actually in the record. However, I was looking through my materials and couldn't find it. Correct. However, what did happen is the investigation began. Mr. Potts did not respond to the NLRB's inquiries to provide an affidavit to him in that charge, and the NLRB decided to dismiss the charge because Mr. Potts was not cooperating with the investigation. But you're telling us that outside of the record? Unfortunately, yes, Your Honor. Okay. So from the record perspective, we know not whatever happened to the NLRB charge? That's correct, Your Honor. However, that would take me to my first issue, which is the exhaustion requirement. Did you file a brief in this? I'm sorry, Your Honor? Did you file a brief in this appeal? I did, Your Honor. I don't have it, so I'm not sure why. Thank you.  Okay. Yes, Your Honor. The American Bodily Company did file a brief. The exhaustion issue, as I was saying, relates to the fact that under Chapman v. UAW Local 1005, this court en banc reiterated what the proper standard was for exhaustion in terms of the requirement that the individual fully exhaust the contractual grievance procedures available to him. There are only three circumstances under which an individual will be excused from that requirement. Those circumstances are if the contract has been repudiated by the company. That is not at issue here. Clearly, the facts in this case show the company was engaged in the contractual grievance process in cooperation with the union. The second is that the process would be futile. There is no evidence that the process would be futile. In fact, to the contrary, the union had negotiated a deal with the company to bring Mr. Potts back and to reinstate him to his employment. The last exception would be a duty of fair representation breach. However, the court does not even need to reach that analysis here because, as the court said in Chapman, the issue is the union's conduct in a duty of fair representation breach. Here, the employee withdrew that grievance. What happened was he filed a grievance on August 30, 2010, relating to his job duties and his belief that somebody was performing his job. On September 14, 2010, the union and the company met to discuss the grievance. And then on September 30, 2010, the company issued notice to Mr. Potts indicating that they would allow him to use his plant-wide seniority to bump the least senior employee, which at that point would have been a merchandiser, and that he needed to let the company know if that's what he wanted to do, and if so, he could then be qualified for that position. Mr. Potts did not respond, and instead, on October 2, 4, and 6, and that's record sites 594, 596, and 598, he wrote to the union requesting that grievance be withdrawn. On October 12, Mr. Averill wrote to Mr. Potts, that record site is 698, stating, I will withdraw your grievance. So Mr. Potts knew, as of October 12, his grievance was being withdrawn, contrary to his contradictory affidavit that he has submitted to the lower court, and certainly, as Mr. Mando stated, there can be no question that by February 25, 2011, when Mr. Averill writes again to Mr. Potts that they will be determining whether or not to request arbitration, that grievance was not present as one of the grievances to which the union may request arbitration. Therefore, because that grievance had been withdrawn, he is barred from proceeding under his Section 301 claim, because he failed to exhaust the contractual grievance procedures. If I may address the appellant's arguments about a good faith pursuit of the grievance process, and his equitable tolling argument as, excuse me, let me refer back to the good faith belief standard and the material relief provided by the procedures. The appellant is confusing the internal union appeal process and the standards applicable there to the contractual grievance process. Specifically, this court in Robinson v. Central Brass was dealing with an issue in which the employee had been terminated for absenteeism. The union did not grieve the issue, or rather, I apologize, it was grieved, but the union decided not to arbitrate that issue. The time under the contract had elapsed for doing so, and they suggested that she proceed through the internal union appeal process. However, that internal appeal process was not going to give her the relief that she sought, which was reinstatement. Therefore, the court used the standard of good faith pursuit and the union's conduct to determine that they would toll the statute of limitations under those circumstances. That is not this case here. This case involves contractual grievance procedures. That also relates to the Lucas decision that- Can I ask you something before your time expires? Sure. Is it your position that Mr. Potts did or did not raise the equitable tolling argument in the district court? May I respond to Your Honor's question? He did not, Your Honor. His entire argument was that the time accrued, and that is the language that he used, the time accrued on May 1, 2012 on the date that the union responded to his inquiries and his conduct towards the union to try to revive his grievance. Thank you, Your Honor. Thank you. Thank you. The Robinson case, I think, fits the facts of this matter very well. The whole notion of you've got to figure out if you can work it out amongst yourselves before you go take another step and get the courts involved, whether it's the internal process or whether it's the external process that Mr. Potts was pursuing, it certainly would be a matter of fact and not a matter of law that would have justified the dismissal at the summary judgment level because Potts had never withdrawn that grievance. There was, in fact, that 2011 release executed by the company and the union that explicitly left out 118823, the same grievance that the company is saying was withdrawn. But once again, if all reasonable inference, I think the district court erred in determining that he believed Mr. Averill's statements and his affidavits versus Mr. Potts' statements, which contradict each other, but that's not unusual, the threats occur. But the issue that was argued, Your Honor, below was that the appropriate date to start the clock was that May 1, 2012. When all the remedies had been exhausted to that point in time, Mr. Potts clearly knew at that point in time, as did the union, that it wasn't going any further. And I think the courts always want to encourage the parties to resolve their matters before actually proceeding with a case. I appreciate your time. Thank you, Your Honor. Thank you. Thank you all for your argument. The case will be submitted. Would the clerk call the next case, please?